IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 17-341 |
| | ) | |
| ALBERT McCALL | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO REVOKE ORDER OF DETENTION

AND NOW, comes the United States of America, through its counsel, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Brendan T. Conway, Assistant United States Attorney for said district, and respectfully submits its Response to Defendant's Motion to Revoke Order of Detention (Document No. 28). For the reasons set forth below, the Court should deny the defendant's motion.

A.  FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 2017, United States Magistrate Judge Robert C. Mitchell approved a search warrant for the residence of Iklas Davis and Quinyahta Rochelle in connection with their involvement in various identity-theft related offenses. (Exhibit A).  Davis and Rochelle are two of the defendant's many coconspirators.  Among the items of evidence that led to the search of that home was a list of individuals' names and personal identification information found in the trash of the residence that all had connections to J.P. Morgan Chase, where the defendant's wife worked. The search revealed all sorts of the evidence showing that Davis and Rochelle were involved in an identity theft operation, including an embossing machine used to manufacture counterfeit credit cards that belonged to the defendant. (Exhibit B).  The search also revealed a firearm, ammunition, and approximately 100 bricks of heroin. (Exhibit C).

Davis was interviewed in connection with the execution of the search warrant and his arrest on a firearms charge. (Exhibit D).  During the course of that interview, Davis admitted to his involvement in the identity-theft operations and identified as "OH" that the agents believe is the defendant.  According to Davis, the individual who the agents believe is the defendant "taught him how to purchase the account information online, manufacture counterfeit access devices, and carry out the purchases."  Davis believed that the individual was then in Georgia, and that the individual also sold cocaine.  In fact, Davis admitted to assisting in some of the deliveries.

In October 2017, the agents developed a confidential source ("CS") who was able to record telephone calls with McCall under the direction of the agents.  A summary of those telephone calls is attached hereto as Exhibit E.  During those telephone calls, the defendant admits to his involvement in the identity theft operation.  He provides the CS with the names and personal identification information of several individuals and requests that the CS provide him with credit reports of those individuals.  McCall admitted that he used "Discover and American Express accounts from 'Dumps' for rental cars, hotels, and gas stations however, does not use them to 'Hustle.'"  He admitted to traveling extensively in connection with his fraudulent activity, including to Georgia, Alabama, Tennessee, Ohio and Michigan, but that he is trying to focus on selling marijuana.  There is also one discussion related to cocaine.  He claims that he has a contact inside a bank, and other contacts at Time Warner, Verizon, and at a car dealership in Detroit through which he can obtained personal identification information.

McCall also discussed the fact that he was under investigation, but that the CS need not worry about McCall divulging any information because he has been doing this for seventeen years. He went on to explain that he does not have to worry about people cooperating against him because

they are only looking at 0-6 months and he has instructed them to not talk to the police, to request an attorney, and to exercise their right to remain silent. McCall also discussed various criminal code sections, including Wire Fraud and Identity Theft, and the elements of those offenses.

Contemporaneously with those discussions, an undercover federal agent was also recording conversations with the defendant, and the summary of those is attached hereto as Exhibit F. During those calls, the defendant explains a casino check fraud scheme and also agrees to produce a counterfeit Ohio driver's license. At first, the defendant wanted to trade a counterfeit license for a link so that the defendant could obtain credit reports. Eventually, however, the undercover agent and the defendant agreed to exchange $500 for the counterfeit driver's license. The defendant received a wire transfer of the money at a Walmart in Montgomery, Alabama, as confirmed by video surveillance. The defendant received the wire using a stolen identity and a counterfeit driver's license, which the agents later seized pursuant to a search of a home in Columbus, Ohio. The defendant also sent the counterfeit driver's license, which the agents also confirmed by reviewing video surveillance.

Based on the information, agents applied for a Court Order authorizing the government to receive data location information related to the defendant's cellular telephone. (Exhibit G). United States Magistrate Judge Cynthia Reed Eddy approved the Court order. The data location information revealed that the defendant traveled extensively, which corroborated the recorded discussions with the CS and the undercover federal agent. (Exhibit H).

On November 21, 2017, United States Magistrate Judge Lisa Pupo Lenihan approved a criminal complaint that charged the defendant with a variety of fraud-related offenses. (Exhibit I). On November 22, 2017, the Warren, Michigan police department arrested McCall on unrelated drug charges. (Exhibit J). In summary, police arrested McCall with 305 30-milligram oxycodone

tablets in two different pill bottles. For both bottles, the labels had been ripped off. McCall attempted to conceal one of the bottles and he attempted to conceal credit cards in other people's names from the police. Ultimately, the police found him in possession of three cellular telephones, multiple credit cards in multiple people's names, three social security cards in his own name with two different social security numbers, and $2,800 in cash. The defendant refused to answer booking questions.

On November 28, 2017, United States Magistrate Judge Kimberly A. Jolson, from the Southern District of Ohio, approved a search warrant of a residence in Columbus, Ohio associated with the defendant. (Exhibit K). During that search warrant, the agents found multiple counterfeit Ohio driver's licenses, including the one used by the defendant to pick up the money at the Walmart in Montgomery, Alabama attributable to the counterfeit Ohio driver's license he provided to the undercover federal agent. During the execution of the search warrant, the defendant's son claimed that the defendant was living in the Detroit, Michigan area. At around that same time, the agents learned that the defendant had obtained an Alabama driver's license, claiming that he lived at an address in Alabama. (Exhibit L).

On November 29, 2017, the same day as the execution of the search warrant on Ohio, United States Magistrate Judge David R. Grand conducted a detention hearing. The government has marked the audio recording of that hearing as Exhibit M and provided it to the Court separately. During that hearing, Judge Grand reviewed the defendant's extensive criminal record that was included in a Pretrial Services Report.[1] That criminal history includes the following:

- A 1989 conviction for a felony drug trafficking offense with an unknown sentence in California;

---

[1] Although the government does not have a copy of the Pretrial Services report, the defendant's NCIC report is attached hereto as Exhibit N, and it appears to have the same information contained in the Pretrial Services Report referenced in the audio recording.

- A 1994 conviction for "Conspiracy Cocaine" that resulted in a 87-month term of imprisonment on a five-year term of probation;

- A 1994 conviction for Money Laundering and Cocaine Distribution that resulted in a 151-month term of imprisonment and a ten-year term of supervised release, which he violated in 2003 and received an additional three-year term of imprisonment followed by a seven-year period of supervised release.  This supervised release was terminated in January 2017, meaning that much of the criminal conduct referenced in the Indictment occurred while the defendant was on supervised release; and

- A 2007 conviction for "Conspiracy 2nd: Intent to Perform Class A Felony" for which he received a sentence of 54 months to nine years of incarceration.  It appears that he was released from incarceration on November 11, 2015, which is around the time he began to participate in the conspiracy charged in the Indictment, meaning that he was likely on parole during the commissions of these offenses.

Thus, by any definition the defendant has an extensive criminal record of serious crimes and of violating the conditions of courts' supervision.

Judge Grand granted the government's motion for detention, concluding that the government demonstrated by a preponderance of evidence that there is a serious risk that the defendant will flee and obstruct justice, and that he is a danger to the community. (Exhibit N). Judge Grand made the following points:

- The defendant has served separate prison terms of 12 months, 151 months (plus an additional 36 months for violating his supervised release), and 54 months.  These sentences, however, have not deterred McCall from committing criminal acts;

- In recently recorded telephone calls, the defendant boasted about his expertise in creating fraudulent identification cards, credit cards, etc., and then using them to defraud businesses, apparently all over the country.

- The defendant was also recently overheard planning his next wave of crime and discussing with a potential witness that he could go free if the witness refused to cooperate;

- When the defendant was apprehended he had fraudulent identification, fraudulent credit cards, hundreds of prescription pain pills, and a large amount of cash on him;

- The defendant has no ties to the district in which he was charged, and no ties to Michigan, where he was apprehended;

- The defendant's residency is very unclear. His son told authorities that the defendant resides in Detroit, while the defendant McCall gave conflicting reports as to where he lived, mentioning both Alabama and Tennessee. The defendant was also surveilled in November 2017 at home in Columbus, Ohio, despite having told authorities he left there six months prior to his arrest;

- At the Columbus, Ohio home authorities found more fraudulent credit cards belonging to the defendant;

- In light of his criminal history and the magnitude of the alleged loss, the defendant faces a substantial period of incarceration if convicted. He thus has a significant incentive to flee, and has the apparent ability to perpetuate his fraudulent scheme anywhere, which increases the likelihood he will try to flee; and

- Although the defendant does not appear to be a violent person, he is a danger to the community in that he has shown he has no intention of complying with any bond conditions this Court would impose.

(Exhibit N, p. 2).

At the detention hearing, Maggie Smith represented the government. In January 2018, the defendant sent Ms. Smith the letter attached as Exhibit O. It is not entirely clear what the defendant is attempting to accomplish through the letter, but he is presumably taking that action in retaliation for Ms. Smith's representation of the government in this matter. Obviously, the defendant's attempts to retaliate against counsel for the government will not impact the government's prosecution of this matter, but it reflects poorly on the defendant.

While in transport from Michigan to the Western District of Pennsylvania, a Grand Jury returned a six-Count Indictment charging the defendant with a variety of offenses related to his leadership of his extensive identity theft operation. He now asks this Court to revoke Judge Grand's order detaining him pending trial.

B. LEGAL STANDARDS

The legal procedure for reviewing a United States Magistrate Judge's decision regarding pretrial detention is governed by 18 U.S.C. § 3145(b), which permits defendants who are detained

pending trial by a United States Magistrate Judge to seek a review of that order with the Court having jurisdiction over the matter.  The United States Court of Court of Appeals for the Third Circuit has determined that the appropriate standard of review is *de novo*. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).  The District Court's review, however, does not require an additional or independent evidentiary hearing, and the Court may incorporate the record of the proceedings before the Magistrate Judge. United States v. Dorsey, Criminal No. No. 11-00158, 2011 WL 4383101, at *2 (W.D. Pa. Sept. 20, 2011).

The government alleges that there is a serious risk that the defendant will flee or attempt to obstruct justice, and that there are no conditions of release that will ensure that the defendant will not flee, obstruct justice, or endanger the community.  Pursuant to the Bail reform Act, the Court must consider the following four factors in making its determination about whether the government has met its burden of proof:

(1) the nature and circumstances of the offense;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

    A. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    B. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger posed by the person's release.

18 U.S.C. § 3142(g).  Under the Act a defendant must be released on his own recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." "Thus, the question is whether the defendant presents either an unacceptable risk of flight or a danger to others." United States v. Schatzman, Criminal No. 14-0016, 2014 WL 3565997, at *1 (W.D. Pa. July 18, 2014).  The government must prove the defendant is a risk of flight and that no condition or combination of conditions will assure his appearance at trial by a preponderance of the evidence. United States v. Himler, 797 F.2d 156, 161 (3d Cir.1986). The government must prove the defendant is a danger to the safety of any other person and the community by clear and convincing evidence. Delker, 757 F.2d at 1399.

C.  APPLICATION OF FACTS TO LEGAL STANDARDS

All four of the factors outlined in 18 U.S.C. § 3142(g) support detention.  The defendant is charged with serious ongoing offenses that present a substantial risk of harm to numerous individuals, and he faces a substantial sentence if convicted.  Thus, the defendant has a powerful motive to flee.  The defendant's expertise in manufacturing counterfeit driver's licenses and counterfeit credit cards and his ready access to the personal identification information of numerous individuals would allow him, if released, to easily flee and conceal himself from capture.  Thus, he has both the motive and the means to flee and avoid capture.

The weight of the evidence, as outlined above and in the exhibits, is overwhelming.  The evidence includes incredibly incriminating recorded telephone calls with both a confidential informant and an undercover federal law enforcement officer.  The evidence also includes video surveillance, physical evidence, including evidence seized pursuant to search warrants, and

cooperating conspirators.  Moreover, the evidence demonstrates that the defendant is a leader in the operation, with the highest degree of culpability among his conspirators.

As Judge Grand stated, the defendant's criminal record is "preposterous".  Multiple significant periods of incarceration failed to deter the defendant from criminal conduct, and much of the criminal conduct at issue here occurred shortly after his release from custody and while he was still on supervised release.  The defendant has no respect for the law or the orders of supervising courts.

In addition, as the defendant himself admitted in recorded conversations, he is also involved in drug trafficking, including marijuana and cocaine.  He was arrested with 305 prescription pain pills, multiple cellular telephones, and nearly $3,000 in cash, all of which is consistent the narcotics trafficking.  Thus, the defendant is a vertically integrated criminal in that he is involved in Casino check fraud, access device fraud, manufacturing counterfeit driver's licenses, and narcotics trafficking.  He has no known legitimate employment, and he has no history of legitimate employment.  He is a full-time criminal.

The risk that the defendant will attempt to obstruct justice is real.  Based on recorded telephone calls, he has already provided instructions to would-be cooperating witnesses to not speak with the police, to ask for an attorney, and to assert their right to remain silent.  He also attempted to conceal evidence upon his arrest, including a pill bottle and credit cards in other people's names.   He has retaliated against AUSA Smith through his correspondence.

The defendant has no ties, other than his fraudulent conduct, to the Western District of Pennsylvania.  He has presented no viable release plan, and evidence of his actual residency is unclear.  He recently obtained an Alabama driver's license with an Alabama address.  He was associated with an address in Ohio, where his son lives.  He son told authorities that the defendant

lived in Detroit, but he claimed to pretrial services that he lives in Tennessee. In any event, he has committed fraudulent conduct in multiple states over multiple years, and he was certainly planning to, if anything, expand the breadth of his fraudulent conduct.

Based on all of the above, this Court should uphold Judge Grand's order detaining the defendant. He presented a serious risk of flight, a risk that he will obstruct justice, and a danger to the community, and there are no conditions of release that the Court could fashion to alleviate these risks.

WHEREFORE, for the reasons set forth above, the government respectfully requests that the Court deny the defendant's motion and affirm Judge Grand's order detaining the defendant pending trial.

    Respectfully submitted,

    SCOTT W. BRADY
    United States Attorney

    /s/ Brendan T. Conway
    BRENDAN T. CONWAY
    Assistant U.S. Attorney
    U.S. Post Office and Courthouse
    700 Grant Street, Suite 4000
    Pittsburgh, Pennsylvania 15219
    PA ID No. 78726